IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FRANK LESINSKI,** | : | |
| Plaintiff, | : | Case No. 2:03-cv-932 |
| v. | : | Judge Holschuh |
| **CITY OF STEUBENVILLE, et al.,** | : | Magistrate Judge Kemp |
| Defendants. | : | |
| | : | |

**MEMORANDUM & ORDER**

After being terminated from his position as a Steubenville police officer, Frank Lesinski filed suit against the City of Steubenville and numerous city officials seeking relief pursuant to 42 U.S.C. §§ 1983 and 1985(3). He also brought state law claims of malicious prosecution and intentional infliction of emotional distress. This matter is currently before the Court on Defendants' motion to dismiss, in part, Plaintiff's Complaint for failure to state a claim upon which relief may be granted. (Record at 11). For the reasons set forth below, Defendants' motion is granted.

**I.      Background**

On September 20, 2002, Frank Lesinski, a police officer for the City of Steubenville, responded to a domestic violence call, and arrested the assailant, Jeffrey Emery. Emery was handcuffed and placed in the back of the police cruiser. Lesinski observed Emery beating his head against the Plexiglas divider and attempting to "slip the cuffs" to escape. When Lesinski reached into the rear of the cruiser to stop him, Emery kicked him two times. Lesinski struck him with brachial stuns to bring him under control. Following this incident, Lesinski completed

a use-of-force report.  His shift commander reviewed the report, along with a videotape of the incident, and concluded that Lesinski had acted appropriately.  He forwarded the report to the Internal Affairs Division ("IAD") of the police department.

According to Lesinski, even though his commander cleared him of all wrongdoing, city officials came up with a plan to force Lesinski to resign.  They launched an IAD investigation and filed a disciplinary action against Lesinski.  They also persuaded Mr. Emery to sign an excessive use-of-force complaint and a charge of criminal assault against Lesinski, promising Emery a lenient sentence on the domestic violence charge in exchange for his assistance.  City officials told Lesinski that if he did not voluntarily resign from the police department, Emery's complaint would be filed and Lesinski would be prosecuted on the criminal assault charge.  Lesinski, who did not believe that he had engaged in an excessive use of force, refused to resign.

As promised, he was charged with criminal assault.  That same afternoon, he entered a written plea of not guilty and was released on his on recognizance.  While the criminal assault charge was later dismissed, the disciplinary matter was not.  The IAD report found that Lesinski: (1) used excessive force by striking and choking Emery while Emery was handcuffed; (2) failed to perform his duty when he failed to prevent Emery from striking his head on the Plexiglas; (3) failed to notify the Chief of Police that he had been charged with a crime; and (4) was insubordinate when he failed to go to the detective division as ordered at booking.[1]

---

[1] After being charged, Lesinski was ordered to report to the police department to be booked in.  When he arrived with his attorney, Lesinski was told to speak to the criminal detectives.  However, because his attorney had a scheduling conflict, he directed Lesinski not to talk to the detectives at that time.  Although the attorney attempted to schedule an alternate time for Lesinski to speak to the detectives, his phone calls were not returned.

2

Lesinski was terminated on February 3, 2003 and filed suit on October 15, 2003. His Complaint lists nine causes of action. In Counts I-IV, Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. In Counts V-VII, he asserts equal protection violations including selective prosecution, selective enforcement, and conspiracy to violate civil rights, and seeks relief under 42 U.S.C. § 1985(3). Count VIII is a claim of malicious prosecution and Count IX is a claim of intentional infliction of emotional distress. Named defendants include: the City of Steubenville; City Manager Fred Hays; Law Director Gary Repella; Police Prosecutor Frank Noble; Chief of Police William McCafferty; and Police Operations Captain Paul Harbert. The city officials are sued in both their official and individual capacities.

Defendants have moved to dismiss all counts of the Complaint except Count IV; Count IV alleges that Defendants violated Plaintiff's First and Fourteenth Amendment rights by retaliating against him for engaging in protected conduct. Defendants claim that, with respect to all other counts, Plaintiff has failed to state a claim upon which relief may be granted.

**II.     Standard for Granting Motion to Dismiss**

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint. This rule permits courts to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. See Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974); Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993); Miller v. Currie, 50 F.3d 373, 377 (6th Cir.

3

1995); Murphy v. Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir.1997). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998). The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. See Fitzke v. Shappell, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Lewis, 135 F.3d at 405. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. See Scheuer, 416 U.S. at 236; McDaniel v. Rhodes, 512 F. Supp. 117, 120 (S.D. Ohio 1981).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Conley, 355 U.S. at 47; Dunn v. Tennessee, 697 F.2d 121, 125 (6th Cir. 1982), cert. denied, 460 U.S. 1086 (1983); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).

However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Bare assertions of legal conclusions are insufficient. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir.1993).

### III. Discussion

#### A. Federal Claims

Claiming that Defendants violated his constitutional rights, Plaintiff seeks recovery under two federal statutes, 42 U.S.C. § 1983 (Counts I-IV)[2] and 42 U.S.C. § 1985(3) (Counts V-VII). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants have moved to dismiss all but Count IV for failure to state a claim upon which relief can be granted. In addition, Defendants Gary Repella and Frank Noble contend that they are entitled to absolute prosecutorial immunity on the bulk of Plaintiff's claims.

##### 1. 42 U.S.C. § 1983 Claims (Counts I-III)

In Counts I, II, and III of Plaintiff's Complaint, he seeks recovery under 42 U.S.C. § 1983 for alleged violations of his substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party

---

[2] Counts III and IV cite to "28 U.S.C. § 1983." The Court presumes that these citations are typographical errors, and that Plaintiff intended to instead cite to 42 U.S.C. § 1983.

> injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. In order to recover under this statute, a plaintiff must prove that defendants, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Plaintiff in this case alleges that Defendants, while acting under color of state law, violated his rights under the Fourteenth Amendment, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Defendants do not deny that they were acting under color of state law when the alleged violations took place. The only question is whether Plaintiff has sufficiently alleged a violation of his Fourteenth Amendment substantive due process rights.

Plaintiff asserts three separate causes of action under § 1983 based on alleged violations of his substantive due process rights. In Count I of his Complaint, Plaintiff alleges the following:

> 57. Plaintiff had constitutionally protected property and liberty interests in continued employment with the City. Plaintiff also had constitutionally protected property and liberty interests to be free from the demands for his resignation, formal commencement of the criminal prosecution, the pursuit of the administrative charges, and the termination of his employment, under the circumstances alleged in this Complaint.
>
> 58. Defendants, as government officials and acting under color of state law, acted maliciously, knowingly, deliberately, and with reckless disregard for Plaintiff's constitutional rights, to deprive Plaintiff of his rights, privileges and immunities secured by the United States Constitution, in violation of the Due Process Clause of the Fourteenth Amendment . . .
>
> 59. The conduct of Defendants constitutes an egregious abuse of governmental power. The Defendants used their

6

>> governmental power as an instrument of oppression, in order to arbitrarily, deliberately and intentionally inflict injury upon Lesinski. . .

(Compl. ¶¶ 57-59). In Count II of his Complaint, Plaintiff alleges that Defendants' conduct "constitutes the arbitrary use of official power which shocks the conscience." (Id. at ¶¶ 65-66).

Count III of the Complaint alleges that Repella and Noble violated his substantive due process rights when they filed a baseless criminal charge against him in retaliation for his refusal to resign. He claims that, in doing so, they acted to deter the exercise of his constitutionally protected interests in continued employment, to deter the exercise of his procedural due process rights prior to and after his termination, and to deter him from exercising his right of access to the courts in the event his employment was terminated. (Id. at ¶¶ 68-69).

Defendants urge the Court to collapse Counts I and II into a single claim. However, the Substantive Due Process Clause, which "prohibits the government's abuse of power or its use for the purpose of oppression," has more than one facet. See Howard v. Grinage, 82 F.3d 1343, 1350 (6th Cir. 1996). It protects against official misconduct which infringes on a particular constitutional guarantee. It also serves as a limitation on official misconduct which, although not infringing on a particular constitutional right, is so oppressive that it "shocks the conscience." Valot v. Southeast Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997); Howard, 82 F.3d at 1349; Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir.1993)(same). See also Bell v. Johnson, 308 F.3d 594, 610 (6th Cir. 2002)(holding that the "shocks the conscience" standard applies "only to claims that cannot be traced to an explicit constitutional guarantee."). Because the Substantive Due Process Clause is multi-faceted, the Court rejects Defendants invitation to collapse Plaintiff's claims.

7

Nevertheless, viewing the factual allegations in a light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to state a claim upon which relief may be granted. The Substantive Due Process Clause of the Fourteenth Amendment does not provide the protection sought by Plaintiff. Plaintiff's allegations in Counts I, II, and III can generally be divided into two groups: (1) those allegations related to his alleged right to be free from the demands for his resignation, the pursuit of the administrative charges, and the termination of his employment; and (2) those allegations related to the filing of criminal charges against him. The Court will discuss these in turn.

Plaintiff's claimed constitutional interest "in continued employment with the City" presumably stems from a collective bargaining agreement which provides that his employment cannot be terminated without good cause. (Compl. ¶ 8). His claimed constitutional rights "to be free from the demands for his resignation" and from "the pursuit of the administrative charges" which led to his termination are inextricably intertwined with his claimed right to "continued employment."

In <u>Sutton v. Cleveland Board of Education</u>, 958 F.2d 1339 (6th Cir. 1992), the Sixth Circuit held that while a plaintiff's contractual right to be discharged only for cause is protected by procedural due process, absent the infringement of a fundamental right, it is "not a fundamental interest protected by substantive due process." <u>Id.</u> at 1350-51. See also <u>Charles v. Baesler</u>, 910 F.2d 1349, 1353 (6th Cir. 1990) (holding that state-created contract rights "do not rise to the level of fundamental interests protected by substantive due process"). Plaintiff acknowledges the Sixth Circuit's holding in <u>Sutton</u>, but claims that his termination was merely

8

the culmination in a series of constitutional violations.

Paragraph 53 of Plaintiff's Complaint does make a fleeting reference to violations of his First and Fourth Amendment rights; Plaintiff, however, does not assert separate § 1983 claims based on these alleged constitutional violations. The exact contours of the so-called First Amendment violation are sketchy at best. It appears that Plaintiff claims that Defendants' conduct somehow acted to deter, or to interfere with, his right to petition the court for a redress of grievances. Plaintiff did have the right to refuse to resign, and the right to challenge his subsequent termination in court if he believed that it was not warranted. In fact, he did just that. The Complaint does not allege that Defendants did anything to prevent him from filing suit and, quite frankly, the Court fails to see how Plaintiff's First Amendment rights are implicated just because Defendants demanded his resignation, instituted administrative charges against him, and terminated him based on the outcome of the IAD investigation.[3]

In Perry v. McGinnis, 209 F.3d 597, 609 (6th Cir. 2000), the Sixth Circuit held that even though "a substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience," the claim cannot succeed if the termination did not violate a fundamental right. See also Bracken v. Collica, No. 02-3794, 2004 WL 619203 at **4 (6th Cir. Mar. 24, 2004)(holding that because no fundamental right was violated, the court need not decide whether plaintiff's discharge shocks the conscience); Gurik v. Mitchell, No. 00-4068,

---

[3] Plaintiff also alleges that Defendants violated his Fourth Amendment right to be free from formal commencement of criminal prosecution. This claim will be discussed in much greater detail below. The criminal charges were dismissed more than two months before Plaintiff was terminated. Since Plaintiff has not alleged that his termination infringed on his Fourth Amendment rights, this claim is irrelevant for purposes of deciding whether his substantive due process claim is foreclosed by the holding in Sutton.

2002 WL 59641 at **4 (6th Cir. Jan. 15, 2002)("a public employee's termination does not "shock the conscience" in this court if it was not based on the violation of some fundamental right"). Plaintiff has cited to no authority in support of his claim that threatening to file criminal charges against him unless he agreed to resign, and then filing those charges and terminating him when he refused to resign is conduct so egregious that it "shocks the conscience."[4]

In this case, because Plaintiff's termination did not infringe on a fundamental right, his substantive due process claim must fail. Based on the holdings in Sutton and Perry, the Court concludes that, to the extent Plaintiff's substantive due process claim is based on his alleged right to "continued employment," or to be "free from the demands for his resignation," or from "the pursuit of the administrative charges," Plaintiff has failed to state a claim upon which relief may be granted.

This brings the Court to Plaintiff's allegations concerning the filing of criminal charges against him. In Count I of the Complaint, Plaintiff alleges that he has a substantive due process right to be free from "formal commencement of the criminal prosecution." (Compl. ¶ 57). Plaintiff, unsurprisingly, has cited to no authority for the proposition that an individual has any general constitutional right to be free from criminal prosecution.

In Count III of the Complaint, Plaintiff alleges that Repella and Noble demanded his

---

[4] In fact, the Sixth Circuit has been very reluctant to apply the "shocks the conscience" standard outside the realm of physical force. See Braley v. City of Pontiac, 906 F.2d 220, 225 (6th Cir. 1990) ("applying the 'shock the conscience' test in an area other than excessive force, however, is problematic. . . [w]e doubt the utility of such a standard outside the realm of physical abuse"); Webb v. McCullough, 828 F.2d 1151, 1158 (6th Cir. 1987)("substantive due process is concerned with violations of personal rights of privacy and bodily security" . . . the question is "whether the force applied caused injury so severe, and was so inspired by malice or sadism. . . that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.").

resignation and, when he refused to resign, they retaliated against him by filing a baseless criminal charge. (Compl. ¶¶ 68-69). In his memorandum in opposition to the motion to dismiss, Plaintiff, citing Albright v. Oliver, 510 U.S. 266 (1994), argues that "[t]he malicious prosecution of an individual and continued detention of an individual without probable cause clearly violate rights afforded by the Fourth Amendment." (Mem. Opp'n at 16). Unfortunately, it is precisely because the Fourth Amendment may be implicated that Plaintiff's substantive due process claim is foreclosed.

In Albright, the Supreme Court noted that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" 510 U.S. at 272 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The petitioner in Albright surrendered to authorities upon learning that an arrest warrant had been issued. He was released on bail and the charges against him were later dismissed. He filed suit under § 1983, alleging a violation of his substantive due process right to be free from criminal prosecution except upon probable cause. The Supreme Court held that the Substantive Due Process Clause of the Fourteenth Amendment does not give rise to a claim of malicious prosecution under § 1983. Id. at 271, 275. Pursuant to the holding in Graham, the Court found that the petitioner's claim should have been asserted as a Fourth Amendment violation, rather than a substantive due process violation. Id. at 271. See also Thacker v. City of Columbus, 328 F.3d 244, 258-59 (6th Cir. 2003)(discussing Sixth Circuit's interpretation of Albright).

Based on the holding in Albright, the Court concludes that to the extent Plaintiff's

11

alleged violation of his right to be free from prosecution without probable cause is couched as a substantive due process violation, Plaintiff has failed to state a claim upon which relief may be granted.[5] Plaintiff also alleges that "[t]he practices, policies and customs of the City of Steubenville effected and/or contributed to cause the deprivation of Lesinski's rights." (Compl. ¶ 60). However, absent a constitutional violation, there can be no municipal liability. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)(for municipal liability to exist, a constitutional violation must take place); Watkins v. City of Battle Creek, 273 F.3d 682, 687 (6th Cir. 2001)("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

For the reasons stated above, the Court concludes that Defendants are entitled to dismissal of Counts I, II, and III of Plaintiff's Complaint. Plaintiff's allegations are insufficient to state a claim under the Substantive Due Process Clause of the Fourteenth Amendment.

### 2. 42 U.S.C. § 1985(3) Claims (Counts V-VII)

Counts V, VI, and VII of Plaintiff's Complaint seek recovery for equal protection violations pursuant to 42 U.S.C. § 1985(3). In Count V of his Complaint, Plaintiff alleges that "Defendants maliciously caused the criminal assault complaint to be filed against Lesinski, then

---

[5] Defendants argue that Plaintiff's vindictive prosecution claim should be analyzed using equal protection standards, and should be dismissed because Plaintiff does not allege that the prosecution was motivated by a discriminatory purpose. In so arguing, Defendants fail to recognize that there is a difference between a claim of *vindictive* prosecution and a claim of *selective* prosecution. A claim of selective prosecution arises when an individual is singled out for prosecution for discriminatory reasons; a selective prosecution is subject to equal protection standards. In comparison, a claim of vindictive prosecution arises when a prosecutor singles someone out for prosecution because that person has exercised a constitutional right. See United States v. One 1985 Mercedes, 917 F.2d 415, 420 (9th Cir. 1990). In cases of vindictive prosecution, equal protection standards do not apply.

prosecuted Lesinski when the Defendants had no rational basis for their conduct. Defendants selectively prosecuted Lesinski out of malice and personal animosity." (Compl. ¶¶ 84-85). In Count VI of his Complaint, Plaintiff alleges that:

> 88. Defendants, in advocating, filing and pursuing the administrative charges in support of termination of Lesinski's employment, and in terminating Lesinski's employment, selectively enforced the City's rules, regulations and procedures which govern the conduct of the City's police officers, and the City selectively enforced the laws of the State of Ohio.
> 89. Defendants, in advocating, filing and pursuing the criminal assault charge against Lesinski, selectively enforced the laws of the State of Ohio.
> 90. Defendants intentionally treated Lesinski differently than other similarly situated police officers employed by the City, when there was no rational basis for the difference in treatment.
> 91. The conduct of the Defendants was wholly irrational, arbitrary, vindictive, motivated by ill will, illegitimate animus, and a desire to "get" Lesinski.
> 92. Defendants selectively enforced administrative rules and regulations of the City, and selectively enforced the laws of the State of Ohio against Lesinski, out of malice and personal animosity. . .

Compl. ¶¶ 88-92. Count VII alleges that Defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985(3).

That statute reads, in pertinent part, as follows:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Defendants argue that these claims must be dismissed because Plaintiff has failed to

13

allege that the conspiracy "was motivated by racial, or other class-based, invidiously discriminatory animus." Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999)(citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).

Plaintiff counters that, pursuant to the Supreme Court's holding in Village of Willowbrook v. Olech, 528 U.S. 562 (2000), class-based allegations are no longer needed to sustain an equal protection claim. In Olech, plaintiff filed a § 1983 claim against the Village of Willowbrook after the Village demanded that she grant a 33-foot easement to connect her property to the municipal water supply. Other property owners had been required to grant only a 15-foot easement. Plaintiff claimed that this violated her right to equal protection. She did not allege that she was a member of protected class, but instead argued that the Village's demand was "irrational and wholly arbitrary." The Supreme Court upheld her claim even though she was a "class of one." It noted that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination . . ." Id. at 564. Therefore, plaintiff need not allege that she was a member of a protected class; it is enough to allege that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.

While Olech stands for the proposition that an equal protection claim may be viable under § 1983 even when the plaintiff is not a member of a protected class, it does not eliminate the requirement that, in order to state a valid claim under 42 U.S.C. § 1985(3), the plaintiff must allege that the equal protection violations were motivated by a class-based discriminatory animus. See Radvansky v. City of Olmstead Falls, 395 F.3d 291, 314 (6th Cir. 2005)("there

14

must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions"); Underfer v. University of Toledo, No. 00-4568, 2002 WL 1263957 at *2 (6th Cir. June 5, 2002)(rejecting appellant's claim that Olech eliminated the class-based discriminatory animus requirement for § 1985(3) claims, and noting that the statute "only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) those individuals who join together as a class for the purpose of asserting certain fundamental rights"); Vakalian v. Shaw, 335 F.3d 509, 518-19 (6th Cir. 2003)(in a claim brought under § 1985(3), "[t]he acts which are alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination").

Because Plaintiff has not claimed that the alleged equal protection violations were motivated by a class-based animus, he has failed to adequately allege a violation of § 1985(3). Defendants are therefore entitled to dismissal of these claims.

### 3. Absolute Prosecutorial Immunity

In Imbler v. Pachtman, 424 U.S. 409, 431 (1976), the Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." Citing Imbler, Defendants Gary Repella, Steubenville Law Director, and Frank Noble, Steubenville Prosecutor, claim to be entitled to absolute prosecutorial immunity "with respect to their conduct associated with deciding to charge, charging and dismissing charges against Plaintiff Lesinski." (Mot. to Dismiss at 4). Specifically, they claim to be entitled to immunity for all claims arising out of their conduct in evaluating the evidence against Plaintiff, asking Mr. Emery to sign the complaint against him, deciding to criminally

charge Plaintiff with assault, and later deciding to dismiss the charges against him.[6]

Plaintiff correctly points out that, in determining whether absolute immunity is available, the Court must look to "the nature of the function performed, not the identity of the actor who performed it." Burns v. Reed, 500 U.S. 478, 505 (1991)(quoting Forrester v. White, 484 U.S. 219, 229 (1988)). Prosecutors are entitled to absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430. Defendants concede that absolute immunity does not extend to administrative or investigative functions unrelated to judicial proceedings. See Burns, 500 U.S. at 483 n.2. The Sixth Circuit has explained that the "critical inquiry" is whether the prosecutor's challenged activity is closely related to his or her role as an advocate. Holloway v. Brush, 220 F.3d 767, 775 (6th Cir. 2000).

Plaintiff alleges that Defendants Repella and Noble took part in a calculated plan to force his resignation. He claims that even though they knew there was no basis for filing a criminal assault charge against him, they coerced Mr. Emery into signing a complaint and then, using that complaint as leverage, they threatened to file criminal charges against Plaintiff unless he agreed to resign. When he refused to resign, they retaliated against him by filing those charges. It is Plaintiff's belief that, in doing so, Defendants Repella and Noble were not seeking to protect the public. Plaintiff contends that because they were not acting as advocates of the State and because their conduct was not intimately associated with the judicial phase of the criminal

---

[6] The Court has already determined that Defendants are entitled to dismissal of Counts I-III and V-VII based on Plaintiff's failure to state a claim upon which relief may be granted. The Court will nevertheless address this argument. Not only does it provide an alternative ground for dismissal of the claims brought against Repella and Noble in their individual capacities, but it may also prove useful in narrowing the remaining claims.

process, they should not be entitled to absolute immunity. Plaintiff further argues that the doctrine of absolute immunity cannot shield Defendants against his claim of vindictive prosecution as alleged in Count III of the Complaint.

The problem with Plaintiff's arguments is that Defendants' motives for filing the criminal assault charge against him are irrelevant. The case of Ireland v. Tunis, 113 F.3d 1435 (6th Cir. 1997), is instructive. In that case, Ms. Ireland, the mayor of Rochester Hills, Michigan, filed suit against county prosecutors and others after they filed a criminal complaint for misappropriation of public funds and sought a warrant for her arrest. The mayor claimed that the prosecutors had "'impure and malicious' political motives" for filing the complaint. Id. at 1440. The court nevertheless found that the prosecutors were absolutely immune from suit for deciding to file the criminal complaint, authorizing and preparing the complaint, seeking an arrest warrant, and presenting the charging documents to the judge. The Sixth Circuit noted, "[t]hat Ireland ascribes impure and malicious motives to the prosecutors is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions." Id. at 1447.

The Supreme Court, in Imbler, acknowledged that providing prosecutors with absolute immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." 424 U.S. at 427. Nevertheless, the Court found that the "broader public interest" is served by providing absolute immunity so that prosecutors can perform their jobs without fear of reprisal. Id. at 427-28. See also Lomaz v. Hennosy, 151 F.3d 493, 498 n.7 (6th Cir. 1998)(holding that even though it appeared that county prosecutors were "motivated by something other than the good of the

community," they were still absolutely immune from liability under § 1983); Rankin v. Berkeley County Sheriff's Dep't, 222 F. Supp.2d 802, 806 (N.D.W.Va. 2002)(prosecutor entitled to absolute immunity for decision to prosecute "whether it was vindictive or not"); Williams v. Hartje, 827 F.2d 1203, 1209 (8th Cir. 1987)(absolute immunity applies "even if the prosecutor makes that decision in a consciously malicious manner, or vindictively"); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (prosecutors are absolutely immune from claims that they "threatened defendants with vindictive criminal prosecutions"); Myers v. Morris, 810 F.2d 1437, 1446 (8th Cir. 1987)(absolute immunity "is not defeated by allegations of improper motivation such as malice, vindictiveness or self-interest"), abrogated on other grounds by Burns v. Reed, 500 U.S. 478 (1991).

The Court therefore finds that, to the extent Plaintiff seeks damages, under *any* theory, from Defendants Repella and Noble, related to their conduct in evaluating the evidence against him, asking Mr. Emery to sign the complaint against him, deciding to criminally charge Plaintiff with assault, or later deciding to dismiss the charges against him, these two defendants are entitled to absolute prosecutorial immunity on claims brought against them in their individual capacities. As Defendants acknowledge, however, there may be other conduct alleged in the Complaint that falls outside the protections of the doctrine of absolute prosecutorial immunity.

    **B.    State Claims (Counts VIII-IX)**

Count VIII of Plaintiff's Complaint alleges that Defendants maliciously prosecuted him. Count IX alleges that Defendants intentionally caused him severe emotional distress. In their motion to dismiss, Defendants argue that the City of Steubenville, and Defendants Repella and

Noble are immune from liability on these state law claims.[7]

### 1. City of Steubenville

Defendants argue that Plaintiff's state claims against the City of Steubenville are barred by Ohio Revised Code § 2744.02, which, with a few exceptions, provides immunity to political subdivisions for damages alleged caused by acts or omissions of the political subdivision or its employees. Plaintiff concedes that the state law claims against the City are barred and must be dismissed.

### 2. Repella and Noble

Defendants also argue that the state law claims against Defendants Repella and Noble, are barred by Ohio Revised Code § 2744.03(A)(7), which reads as follows:

> The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.

Ohio Revised Code § 2744.03(A)(7). Defendants then argue that, to the extent Plaintiff's state law claims of malicious prosecution and intentional infliction of emotional distress are based on Repella's and Noble's decision to charge Lesinski with a crime, and later dismiss those charges, the common law doctrine of absolute prosecutorial immunity bars these claims. See Willitzer v. McCloud, 6 Ohio St. 3d 447, 449, 453 N.E.2d 693, 695 (Ohio 1983)(recognizing possible application of prosecutorial immunity in context of state law claim).

---

[7] No other defendants have moved to dismiss these state law claims. Therefore, to the extent applicable, these claims remain pending against them.

For the reasons discussed earlier, the Court finds that, to the extent Plaintiff's claims of malicious prosecution and intentional infliction of emotional distress against Defendants Repella and Noble are based on their decision to charge him with a crime, or to later dismiss those charges, these two defendants are entitled to absolute immunity on the state law claims.[8]

**IV.  Conclusion**

Defendants' motion to dismiss in part (Record at 11) is **GRANTED**.  For the reasons stated above, Defendants are entitled to dismissal of Counts I, II, III, V, VI, and VII of Plaintiff's Complaint.  Defendants have not moved to dismiss Count IV.

Defendant City of Steubenville is entitled to dismissal of Plaintiff's state law claims of malicious prosecution and intentional infliction of emotional distress on grounds of statutory immunity.  Defendants Repella and Noble are entitled to absolute prosecutorial immunity, to the extent available, on the state law claims brought against them in their individual capacities.  The two state law claims remain pending against all other defendants.

**IT IS SO ORDERED.**


Date: July 13, 2005                    **/s/ John D. Holschuh**
                                       John D. Holschuh, Judge
                                       United States District Court

---

[8]  Again, Defendants concede that to the extent these claims may arise from other conduct, the doctrine of absolute immunity would not apply.